IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CR-110-D
No. 7:19-CV-103-D

| | |
|---|---|
| EDWIN LEO BROWN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

On June 3, 2019, Edwin Leo Brown ("Brown" or "petitioner") moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence [D.E. 61] and filed a memorandum in support [D.E. 61-1]. On June 17 and 22, 2020, through appointed counsel, Brown moved to vacate his felon in possession of a firearm conviction due to Rehaif v. United States, 139 S. Ct. 2191 (2019). See [D.E. 80, 82].[1] On October 8, 2021, the court dismissed Brown's Rehaif claim. See [D.E. 99].

On November 17, 2021, the government moved for summary judgment on Brown's remaining ineffective assistance of counsel claim [D.E. 102] and filed a memorandum and exhibits in support [D.E. 103]. On December 22, 2021, through counsel, Brown responded in opposition and moved for summary judgment [D.E. 109]. On February 2, 2022, the government replied [D.E. 116]. As explained below, the court denies the cross-motions for summary judgment. The court refers the matter to Magistrate Judge Numbers for an evidentiary hearing and a memorandum and recommendation on the one remaining ineffective assistance of counsel claim.

---

[1] The court grants Brown's motion to withdraw [D.E. 86] his pro se motion to amend his Rehaif claim [D.E. 81].

I.

While investigating narcotics distribution in Jacksonville, North Carolina, the Jacksonville Police Department ("JPD") identified Brown as a mid-level drug trafficker who distributed crack cocaine on at least four occasions between November 12, 2015, and April 14, 2016. See [D.E. 1]; Rule 11 Tr. [D.E. 55] 22–23; PSR [D.E. 37] ¶ 5. On April 16, 2016, JPD officers responded to a disturbance call at a residence where Brown was located. Rule 11 Tr. [D.E. 55] 24; PSR ¶ 6. Brown, who appeared intoxicated, became argumentative with the officers and struck one of the officers in the face and head with his fist and a concealed loaded handgun as the officers tried to arrest him, resulting in multiple injuries to one officer. Rule 11 Tr. [D.E. 55] 24–26; PSR ¶¶ 6–9.

On October 18, 2016, the United States charged Brown in a five-count indictment with four counts of possession with intent to distribute a quantity of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) (counts one through four) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (count five). See [D.E. 1]; PSR [D.E. 37] ¶¶ 1–2. Brown "didn't want to go to trial." Brown Dep. [D.E. 103-1] 5. In January 2017, the government proposed a plea agreement to Brown's first attorney (Frank Harper) in which Brown would agree to plead guilty to count five, the United States would agree to dismiss counts one through four of the indictment at sentencing, and Brown would agree to cooperate with the United States. See Mot. Summ. J., Ex. 2 [D.E. 103-2]; Brown Dep. [D.E. 103-1] 6–7. Brown did not want to cooperate and asked Harper "to go negotiate another bargain." Brown Dep. [D.E. 103-1] 6. The United States then offered to drop the cooperation provision in the plea agreement. See id. at 7. Harper urged Brown to take the plea agreement, warning Brown that "he thought the judge was going to be tough at sentencing" because of the officer's injuries. Id. at 7–10. Harper also showed Brown a sentence calculation worksheet and informed Brown that "the drug charges really don't hold no time." Id. at

2

8. Brown—who "lacked a whole bunch of knowledge dealing with the federal system" and believed he was going to receive a substantially shorter sentence in state court on "the same stuff"—decided that a ten-year sentence was excessive, rejected the plea agreement, and "felt like [Harper] wasn't the lawyer [he] needed at the time." Id. at 5–9.

On January 14, 2017, Harper moved to withdraw as appointed counsel "based on an irreparable breakdown in the attorney-client relationship." [D.E. 28]. On January 20, 2017, the court granted Harper's motion to withdraw and allowed Harper to withdraw. See [D.E. 30].

On February 6, 2017, Brett Wentz filed a notice of appearance as appointed counsel for Brown. See [D.E. 32]; Brown Dep. [D.E. 103-1] 9–10. At their first meeting, Wentz showed Brown the videotaped drug transactions. Brown Dep. [D.E. 103-1] 11. Wentz also told Brown that the United States made the same plea agreement offer. Id. at 11–13. In that plea agreement offer, Brown would plead guilty to count five and would not be required to cooperate, and the United States would dismiss counts one through four at sentencing. See Wentz Decl. [D.E. 73-1] ¶ 3; Brown Dep. [D.E. 103-1] 11–14; Mot. Summ. J., Ex. 3 [D.E. 103-3]. Wentz told Brown that the time for accepting the plea agreement was running out. Brown Dep. [D.E. 103-1] 12. Brown asked Wentz for his opinion on the plea agreement, and Wentz "basically said it didn't matter. Either way I go I can't get no more than ten years." Brown Dep. [D.E. 103-1] 11, 14, 16; see Brown Aff. [D.E. 61-2] 2; Wentz Decl. [D.E. 73-1] ¶¶ 4–5.

According to Brown, while deciding whether to accept the plea agreement, Brown did not know that, at sentencing, the court had the discretion to impose an upward departure or variance from the recommended advisory guideline range. See Brown Aff. [D.E. 61-2] 3; contra Wentz Decl. [D.E. 73-1] ¶ 7. Brown's experience with guilty pleas in state court led him to conclude that he would likely receive more leniency at sentencing if he pleaded guilty to all five counts without a plea

3

agreement. Brown Dep. [D.E. 103-1] 14–15. Thus, Brown decided to reject the plea agreement and plead guilty to all five counts without a plea agreement. See id. According to Brown, when he made that decision, he believed he could get no more than ten years in prison whether he pleaded guilty to all five counts without a plea agreement or pleaded guilty to count five with a plea agreement. See id. at 14–16.

On May 1, 2017, the court conducted Brown's Rule 11 hearing. See Rule 11 Tr. [D.E. 55]. At Brown's Rule 11 hearing, the court read each count of the indictment to Brown, informed Brown of the maximum penalties for each count of the indictment (including the 20-year maximum as to counts one through four and the 10-year maximum as to count five), and asked Brown if he understood the penalties associated with each count. See id. at 14–20. Brown stated that he did. See id. The court informed Brown that the sentencing guidelines were advisory and that the court would "consider any departure or variance motion that might be made that might move the range either up or down" at his sentencing hearing. Id. at 18. The court expressly warned Brown that "any prediction from [Wentz] or anyone else as to [Brown's] actual sentence . . . is not binding on the Court," that any incorrect prediction concerning any sentencing topic would not provide Brown with a basis for withdrawing his guilty plea, and that the court could impose up to the maximum penalty as the sentence on each count. Id. at 18–20. Brown confirmed under oath that he understood each charge against him, the maximum penalties associated with each charge, the rights that he would waive by pleading guilty, and the sentencing process, including the court's discretion to upwardly depart or vary or to sentence Brown up to the statutory maximum on each count. See id. at 16–21. The court asked Brown if anyone had threatened him or made a promise to him or anyone else that caused him to decide to plead guilty, and Brown answered in the negative. See id. at 19. Before the court accepted Brown's guilty plea, it advised him that he could "still plead not guilty to all these

4

charges if [he] want[ed] to." Id. at 20. Brown understood all these facts and pleaded guilty without a plea agreement to all five counts in the indictment and thereby exposed himself to a sentence greater than ten years. See id. at 21–22; PSR [D.E. 37] ¶ 4.

On September 6, 2017, the government filed a motion for an upward departure under U.S.S.G. § 4A1.3. See [D.E. 44]. On September 12, 2017, the court held Brown's sentencing hearing. See [D.E. 45, 47]; Sentencing Tr. [D.E. 56]. At sentencing, Brown objected to a four-level enhancement for possessing a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B). See PSR Add. [D.E. 37] ¶ 2, Sentencing Tr. [D.E. 56] 22–23.[2] The court heard testimony from two of the arresting officers, including the officer that Brown violently assaulted, credited the officers' testimony, and overruled Brown's objection. Sentencing Tr. [D.E. 56] 5–21, 26–28. The court calculated Brown's total offense level to be 27, his criminal history category to be III, and his advisory guideline range to be 87 to 108 months' imprisonment. See id. at 28. The court heard counsels' arguments on the government's motion for an upward departure, granted the motion, and thoroughly explained the basis for its decision. See id. at 28–35. After the upward departure, Brown's offense level became 30, his criminal history category became VI, and his new advisory guideline range became 168 to 210 months' imprisonment on counts one through four and 120 months' imprisonment on count five (due to the statutory maximum on count five). See id. at 35.

After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Brown to 210 months' concurrent imprisonment each on counts one through four, and 120

---

[2] At the hearing, Brown withdrew his objection to a six-level enhancement for assaulting a law enforcement officer in a manner creating a substantial risk of serious bodily injury under U.S.S.G. § 3A1.2(c)(1). Compare PSR Add. [D.E. 37] ¶ 1, with Sentencing Tr. [D.E. 56] 23.

5

months' concurrent imprisonment on count five, for a total term of 210 months' imprisonment. See [D.E. 47]; Sentencing Tr. [D.E. 56] 41–45. Brown appealed his sentence [D.E. 49]. On July 3, 2018, the United States Court of Appeals for the Fourth Circuit affirmed. See United States v. Brown, 740 F. App'x 259, 260–61 (4th Cir. 2018) (per curiam) (unpublished).

Brown asserts that he received ineffective assistance of counsel from Wentz during plea negotiations, causing him to reject a plea offer to count five and thereby cap his maximum prison exposure at ten years. Mot. Vacate [D.E. 61] 4; Mem. Supp. Mot. Vacate [D.E. 61-1] 9–16. The United States "has conceded deficient performance" by Wentz in advising Brown about his potential sentence during plea negotiations but argues Brown cannot show he was prejudiced because Brown pleaded guilty without a plea agreement based on his own opinion that the court would be more lenient if he pleaded guilty to all five counts. In support, the United States cites Brown's decision to reject Harper's advice to accept the noncooperation plea agreement and the court's admonitions to Brown at his Rule 11 hearing about the penalties and the sentencing process, including that the court had the discretion to sentence him up to the statutory maximum on each count, which obviously could be more than ten years. See Mem. Supp. Mot. Summ. J. [D.E. 103] 1–2, 10–21.

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a

6

genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for the factfinder to return a verdict for that party. Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome properly preclude summary judgment. Anderson, 477 U.S. at 248.

In reviewing a section 2255 motion, the court is not limited to the motion itself. The court also may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225–26 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam)

7

(quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 137 S. Ct. 1958, 1964–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). "[S]entencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover, 531 U.S. at 203–04. To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–96 (1984); United States v. Mayhew, 995 F.3d 171, 176 (4th Cir. 2021). The Sixth Amendment right to counsel applies to plea bargaining, and prejudice occurs when, absent deficient advice, the defendant would have entered, and the court have accepted, a plea that would have resulted in a better outcome. See Lafler, 566 U.S. at 162–64.

Brown cites United States v. Mayhew, 995 F.3d 171 (4th Cir. 2021), and argues that if he received proper advice from Wentz about the plea agreement and had understood that the maximum term of imprisonment that he could have received was ten years under the plea agreement, then he would have accepted the plea agreement. See Mot. Summ. J. & Resp. Opp'n [D.E. 109] 3–8; Brown Aff. [D.E. 61-2] 3. Brown argues that Wentz's deficient advice prejudiced him because he ultimately received a sentence greater than ten years on counts one through four. See Mem. Supp. Mot. Vacate [D.E. 61-1] 15–16; Mot. Summ. J. & Resp. Opp'n [D.E. 109] 1–2; see also Frye, 566 U.S. at 147–48 (one way of proving prejudice arising from deficient advice during plea negotiations

8

is to show that petitioner would have accepted an earlier plea offer with more favorable terms had he received effective assistance of counsel).

In opposition to this conclusion, the United States argues there is no prejudice because Brown knowingly and voluntarily pleaded guilty to all five counts based on his belief that the court would give him a lower sentence if he accepted responsibility for all five counts. See Mem. Supp. Mot. Summ. J. [D.E. 103] 10–21; Reply Supp. Mot. Summ. J. [D.E. 116] 2–9. In support, the United States cites Brown's decision to reject the plea agreement when Harper represented him and cites the court's admonitions about the penalties and the sentencing process during Brown's Rule 11 hearing and before Brown pleaded guilty. See Mem. Supp. Mot. Summ. J. [D.E. 103] 10–21; Reply Supp. Mot. Summ. J. [D.E. 116] 2–9; see also United States v. Akande, 956 F.3d 257, 263 (4th Cir. 2020); United States v. Akinsade, 686 F.3d 248, 253–54 (4th Cir. 2012); United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). Accordingly, the United States argues that Brown understood that he could receive a total sentence of more than ten years and pleaded guilty anyway.

A petitioner can demonstrate prejudice arising from deficient advice in plea bargaining if petitioner can prove that he would have accepted a more favorable plea offer, pleaded guilty, and received a lower sentence if he received effective assistance of counsel. See Lafler, 566 U.S. at 174; Frye, 566 U.S. at 147–48; Mayhew, 995 F.3d at 179–80; Terry v. United States, No. 2:11-CR-00037, 2015 WL 5786804, at *3 (S.D.W. Va. Sept. 30, 2015) (unpublished). Genuine issues of material fact exist concerning whether Brown, with effective legal advice from Wentz, would have accepted the proposed noncooperation plea agreement in which Brown would have pleaded guilty to count five. In order to resolve this issue, the court needs to hold an evidentiary hearing and hear testimony from Brown, Harper, and Wentz. See Mayhew, 995 F.3d at 178–80.

9

## II.

In sum, having dismissed petitioner's motions to vacate his conviction on count five due to Rehaif v. United States, 139 S. Ct. 2191 (2019), the court GRANTS petitioner's motion to withdraw his pro se motion to amend [D.E. 86], DENIES respondent's motion for summary judgment [D.E. 102], DENIES petitioner's cross-motion for summary judgment [D.E. 109], and ORDERS United States Magistrate Judge Numbers to hold an evidentiary hearing. The key inquiry at that hearing is whether, with effective legal advice from Wentz, petitioner would have accepted the proposed noncooperation plea agreement in which petitioner would have pleaded guilty to count five and the United States would have dismissed counts one through four, or whether petitioner would have pleaded guilty to counts one through five without a plea agreement.

SO ORDERED. This 25 day of April, 2022.

JAMES C. DEVER III
United States District Judge